## UNITED STATES v. MORGAN.
### Cr. A. No. 28366.

United States District Court
N. D. New York.
June 10, 1954.

Jacob Abrams, New York City, for defendant-petitioner.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for the United States.

BRENNAN, Chief Judge.

As directed by the mandate of the United States Supreme Court in United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, this Court has entertained the petitioner's motion in the nature of a writ of error coram nobis; a hearing has been held; oral evidence received, and the matter is before the court for decision. See also U. S. v. Morgan, 2 Cir., 202 F.2d 67.

A sufficient background of facts appears in the above decisions for an understanding of the problem presented and the prior steps taken herein. They will be supplemented by a brief statement of the additional facts developed upon the hearing directed by said decisions.

Morgan testified that at the time of his arraignment and plea in 1939 Judge Bryant, (now deceased), made no mention of his right to the services of counsel either of his own choosing or by appointment of the court. He further testified as to his lack of knowledge of such rights, and that at the time he was about nineteen years of age. The records of the court were introduced, which were negative as to assignment of counsel, advice of the court as to Morgan's right thereto, and any specific waiver on his part of such right.

It became evident during the petitioner's oral testimony that a definite difference of opinion existed between the

litigants as to the nature of the evidence which the court should receive and as to the showing to be made which would justify the granting of relief.

It was the petitioner's contention that the deprivation of a constitutional right, without more, was sufficient. The United States contended that in this type of proceedings it was incumbent upon the petitioner to justify the delay in seeking relief, and to show, at least prima facie, that a new trial would produce a different result. The court, not being fully satisfied as to the correctness of the contentions, received additional evidence which will be briefly referred to.

The petitioner's early life was unsettled. His first " * * * brush with the law * * * " occurred when he was about twelve years of age. He quit school when he was seventeen years of age, having completed two years of high school. While he apparently came in conflict with the law for minor violations, his first serious offense was the one under attack in this court in 1939. After serving a part of his four-year sentence he was paroled, and in 1942, was convicted in a state court of petit larceny and sentenced to be confined for one year. Upon expiration of that sentence he was returned to federal control because of his violation of parole, and he served the remaining portion of the sentence imposed in 1939. In 1945, there was another minor conviction, and in the same year Morgan was convicted of mail theft at Portland, Oregon. In connection with that offense he broke jail and was sentenced to serve five years for the mail theft and one year for the jail break. He was released in 1950 and in the same year he plead guilty in the state court at Syracuse, New York, to the crime of attempted burglary, and was sentenced to serve from seven to ten years, pursuant to which he is presently confined. The provisions of the multiple offenders act of the State of New York were invoked, Penal Law, State of New York, McKinney's Consol.Laws, c. 40, § 1941, and the conviction under attack was used as a basis for defendant's sentence in the state court as a second offender. There is also a mail theft indictment against the petitioner pending in this district.

At the time of the petitioner's conviction by his plea of guilty in this court he heard the judge ask other persons who came before him that day as to whether or not they wanted attorneys, and the judge would ask attorneys to talk with them. This happened about a half dozen times, but petitioner claims that in each instance it occurred after he had entered his plea. He emphasizes that he plead guilty by reason of the fact that his girl friend had been advised by the probation officer that he would be given probation. In 1951 he attacked the state court conviction in a coram nobis proceeding, alleging fraud on the part of his attorney. He also attempted to attack the 1939 conviction under consideration through a habeas corpus proceeding in the Western District of New York. Having been advised that state court remedies must be exhausted, in 1952 he instituted a coram nobis proceeding in the state court, in which he based his claim for relief upon the allegation that the 1939 conviction was obtained by fraud and deceit in the matter of the alleged promise of probation.

■ After petitioner's 1939 arrest he admitted in substance his guilt of the charges contained in the indictment, by a written statement signed and sworn to. The statement was obtained by postal inspectors who made no promise nor threats against the defendant. The truthfulness of the statement is in no way disputed. Decision upon the admissibility of this document was reserved. The Court now overrules the objection, receives the exhibit and permits the substitution of a photostatic copy thereoof in place of the original.

Other evidence which may be noted is that the record shows that counsel was assigned in the case immediately preceding the disposition of plaintiff's case on the same day. There is evidence to the effect that Judge Bryant customarily advised defendants as to their right

to counsel, although the Clerk stated in substance that he could not say that such advice was regularly given at the time of the 1939 conviction. It is apparent that all records pertaining to the question which are in existence or are available have been produced.

The record is clear that petitioner claims that he did not understand his right to counsel up to 1939, but the record is silent as to the exact dates when he first had knowledge of such rights. It may be inferred that he had such knowledge at least in 1945, when he was convicted of mail theft in Oregon.

We pass next to a consideration of the legal precedents which must guide this court in determining whether or not the plaintiff is entitled to relief.

■ The decision in U. S. v. Morgan eliminates all doubt as to the jurisdiction of the court to entertain a motion, which is the modern substitute for the ancient writ of error coram nobis, to vacate a conviction where no other remedy exists. Although the dissenting opinion refers to the absence of allegations of innocence in the petition, and the failure to explain the delay in seeking relief, the majority does not outline in any detail the requirements of the petition, or the facts which must be shown in the moving papers or on the oral hearing, which would afford a basis for relief. At page 504 of 346 U.S., 74 S.Ct. 247, the Court points out that the Circuit Court did not pass upon the sufficiency of the allegations of the petition, and the opinion appears to hold only that the record is sufficient to enable the trial court to exercise its jurisdiction, rather than to hold that the petition presented a prima facie case warranting the granting of relief.

■ This motion is a distinct step in the criminal case, as distinguished from a separate proceeding having a statutory basis. It therefore appears to follow that the legal requirements are more akin to those applicable to motions than those applying to habeas corpus proceedings.

The above statements are strengthened by certain language of the Supreme Court in the Morgan case, supra. At page 511 of 346 U.S., at page 252 of 74 S.Ct. the court refers to the motion as " * * * this extraordinary remedy" to be allowed " * * * only under circumstances compelling such action to achieve justice." At page 512 of 346 U.S., at page 253 of 74 S.Ct., we find the following language " * * * we think, no other remedy being then available *and* sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court. Otherwise a wrong may stand uncorrected which the available remedy would right." (Emphasis supplied.) The above quotation, taken together with the fact that at page 510 of 346 U.S., 74 S.Ct. 247 the Supreme Court cited with apparent approval certain precedents referred to below which in effect require a showing of innocence and an explanation for delay, is strong indication that the court intended to require a showing on the part of the petitioner of an ultimate personal wrong, as distinguished from the vindication of a constitutional right which would not affect the ultimate result.

In the case of Spaulding v. U. S., 6 Cir., 155 F.2d 919, at page 921, the court said "It is generally held that laches may bar relief * * *". In U. S. v. Moore, 7 Cir., 166 F.2d 102, at page 104, the court stated " * * * no relief can be granted unless it appears that a retrial will result in a judgment different from the one sought to be vacated and that, in the absence of such a showing, the judgment will not be set aside." And 166 F.2d at page 105, "Furthermore, we agree with the District Court that the petitioner has too long slept upon his rights." In U. S. v. Rockower, 2 Cir., 171 F.2d 423, the court followed the holding in U. S. v. Moore, supra. At page 424 of 171 F.2d reference to petitioner's delay in seeking relief is made, and the Court appears to rely upon the apparent ineffectiveness of the relief to

be afforded. In Bice v. U. S., 4 Cir., 177 F.2d 843, the decision of the lower court was affirmed upon the opinion appearing in D.C., 84 F.Supp. 290. The court followed the decisions in U. S. v. Moore and U. S. v. Rockower, supra, and at page 292 of 84 F.Supp. it is stated "The defendant's present petition does not even now assert he was not guilty of the crime to which he pleaded guilty." In Farnsworth v. U. S., 91 U.S.App.D.C. 121, 198 F.2d 600, at page 601, certiorari denied 344 U.S. 915, 73 S.Ct. 338, 97 L.Ed. 706, the court following the Moore case, denied relief upon motion in the nature of error coram nobis, because there had been no showing that a retrial would result in a different judgment, and that the moving party had slept too long upon his rights.

It is urged upon the court in this proceeding that the precedents above referred to should be deemed inapplicable by reason of the large number of precedents in habeas corpus proceedings which, in effect, hold that the deprivation of a constitutional right renders a conviction invalid, and that neither the guilt of the petitioner nor the passage of time can thereafter infuse life therein. This Court has no argument with such decisions, but here the Supreme Court recognizes for the first time the jurisdictional power of this court to afford relief by motion after the sentence imposed had expired. It cannot be doubted that the court in delineating the power to grant relief may impose conditions upon the exercise thereof. Here, the Supreme Court in unmistakable language imposed the conditions that the petitioner must show an absence of other available remedy and sound reasons for failure to seek earlier relief. Such conditions are neither unduly burdensome nor novel. It has been many times held that failure to raise a known constitutional question bars subsequent objection to a conviction. U. S. v. Morgan, supra, 346 U.S. at page 511, 74 S.Ct. 247; Brown v. Allen, 344 U.S. 443 at page 486, 73 S.Ct. 397, 97 L.Ed. 469.

This Court is also of the opinion that the Supreme Court, when, it referred to the achievement of justice and the correction of a wrong, intended that the time-honored purpose of error coram nobis to correct errors in fact, and to right ultimate personal injustices, has not been entirely discarded. If such an interpretation be right, then a showing of innocence, or at least a showing that a new trial would produce a different result, is essential.

■ The petitioner's evidence to show that he was not advised of his right to counsel, and that he did not intelligently waive such right, is not directly contradicted. The Court must find according to the petitioner's contention. The fact that other defendants were so advised and counsel assigned to others is a circumstance to be considered, but is hardly sufficient to overcome the defendant's direct evidence. Absence of records is unfortunate; circumstance does not supply the deficiency.

■ The petitioner's evidence on the whole was unsatisfactory. He was not an illiterate, uneducated young man, but possessed at least average education and years of experience in law violations. In considering petitioner's unexplained delay in seeking relief it would be naive to conclude, in the absence of evidence, that he did not comprehend his rights as he heard such rights later explained to others on the same day.

Here we are not " * * * haunted by the ghost of the innocent man convicted," U. S. v. Garsson, 2 Cir., 291 F. 646, at page 649, since no such claim is made. His confession stands unexplained and uncontradicted. No different judgment can be anticipated. In addition, it is very apparent, as in the case of U. S. v. Rockower, supra, that this application is futile. If the sentence under attack is a cause of petitioner's present confinement, it is difficult to see how he can escape the same result occasioned by the admitted conviction of 1945 in Oregon.

In reaching the conclusion that the petitioner has not made a showing sufficient to warrant the vacating of the conviction under attack, the Court has not overlooked the language of this Circuit in this case, 202 F.2d at pages 68 and 69. Neither has the case of U. S. v. Steese, 3 Cir., 144 F.2d 439, escaped attention. Argument can be made therefrom that in a coram nobis proceeding an invalid conviction, without more, requires relief, and it can be further argued that the courts have of late evidenced such to be the rule. To accept that conclusion is to hold that a criminal judgment is always open to attack upon a mere allegation of the deprivation of constitutional rights. If such is the law, the appellate courts may more properly unequivocally decide.

Acknowledgment of the services of assigned counsel is made with the thanks of the Court.

For the reasons above stated the application must be dismissed, and it is so ordered.