**James Bufford FARNSWORTH,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12669.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 16, 1955.
Decided Feb. 2, 1956.

---

. Mr. Harold D. Cohen, Washington, D. C., appointed by this Court, for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll, Alexander L. Stevas, and Mrs. Kitty Blair Frank, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

On May 3, 1935, upon his pleas of guilty to each of two counts of an indict-

ment for housebreaking and larceny, a judgment of conviction was entered against appellant in this District. Thereafter, in 1946, he was convicted of attempted burglary in the courts of the State of New York. The earlier judgment in this jurisdiction was considered by the New York courts in sentencing appellant as a fourth offender, and he is still imprisoned in New York under that sentence. On July 29, 1953, long after he had completely served his sentence under the judgment of May 3, 1935, appellant filed in our District Court a petition for writ of error *coram nobis* to set aside the judgment on the ground that in the proceedings leading up to it he had been deprived of his constitutional right to counsel.[1] After a hearing, findings of fact and conclusions of law, the petition was denied, followed by this appeal.

The District Court properly assumed jurisdiction to consider the validity of the 1935 judgment by writ of error *coram nobis*. Such a procedure was approved by the Supreme Court in United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. In that case, as in this one, petitioner had served the sentence and attacked the judgment imposing it upon the ground that his constitutional right to counsel, as defined in

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 had been denied. The latter case held that compliance with the Sixth Amendment mandate that an accused is entitled to the assistance of counsel "is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." 304 U.S. at page 467, 58 S.Ct. at page 1024. The Court also said that while an accused may waive the right it must be an intelligent and competent waiver, otherwise a judgment of conviction will be void and subject to collateral attack.

In the present case the District Court found no violation of the Sixth Amendment. In support of affirmance the United States relies upon two of the reasons given by this court when it affirmed denial of relief to this petitioner in an earlier case, Farnsworth v. United States, 91 U.S.App.D.C. 121, 198 F.2d 600, certiorari denied, 344 U.S. 915, 73 S.Ct. 338, 97 L.Ed. 706. We there held that a writ of error *coram nobis* was properly denied because "1) there had been no showing that a retrial would result in a different judgment; 2) appellant had slept too long upon his rights * * *. United States v. Moore, 7 Cir., 1948, 166 F.2d 102."[2] A few other ju-

[1] Appellant also alleged in his petition in the District Court that he was ignorant that the involuntary nature of certain "oral admissions extorted from him by third-degree methods, during his unlawful detention by the police without a hearing in magistrate's court" barred use of such admissions as evidence against him at a trial.

[2] The Government does not appear to urge the third ground mentioned in Farnsworth, that "appellant had had full opportunity at the time of his sentencing in New York to contest the validity of his prior convictions." This criterion for refusing relief by way of *coram nobis* also derives from United States v. Moore, supra. That decision in turn relied upon Gayes v. New York, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962, where the Supreme Court held that the due process clause of the Federal Constitution does not require a state to allow a person who had been sentenced as a sec-

ond offender later to attack collaterally his first conviction as long as he had had an opportunity to contest it at the time of his second sentencing. This decision, however, does not suggest that such a rule applies in the federal courts. See Haywood v. United States, D.C.S.D. N.Y., 127 F.Supp. 485, 488–489; Bojinoff v. People, 299 N.Y. 145, 85 N.E.2d 909; 63 Yale L.J. 115, 122–123. Morgan makes only passing reference to Gayes. See 346 U.S. at page 511 note 22, 74 S.Ct. at page 252. Moreover, in the present case appellant makes the unrebutted claim that he was not allowed to attack his federal conviction at the time of his sentencing in New York. This allegation is supported by the fact that New York does not permit collateral attack upon foreign convictions which are used as a basis for sentence under the state multiple offender law. People v. McCullough, 300 N.Y. 107, 89 N.E.2d 335, certiorari denied, 339 U.S. 924, 70 S.Ct. 615, 94 L.Ed. 1346.

risdictions also followed Moore and erected these same barriers to redress by way of *coram nobis*. See Bice v. United States, 4 Cir., 177 F.2d 843, affirming D.C.Md., 84 F.Supp. 290; United States v. Rockower, 2 Cir., 171 F.2d 423, certiorari denied, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738. But other courts apparently did not so circumscribe the writ, holding that relief should be granted wherever there has been such a denial of a constitutional right as invalidates the conviction. See Garrison v. United States, 5 Cir. 154 F.2d 106, certiorari denied, 320 U.S. 751, 64 S.Ct. 55, 88 L.Ed. 446; Pierce v. United States, 5 Cir., 157 F.2d 848, certiorari denied, 329 U.S. 814, 67 S.Ct. 631, 91 L.Ed. 694; United States v. Steese, 3 Cir., 144 F.2d 439.

In United States v. Morgan, supra, decided subsequently to these cases, the federal conviction under attack had been rendered in 1939. A four-year sentence had been imposed and served. In 1950 Morgan was convicted by a New York court on a state charge and sentenced to a longer term because of the 1939 federal conviction. Approximately 14 months later he filed his application for a writ of error *coram nobis*. The dissenting Justices maintained that the writ should not have been entertained because, among other things, the petition therefor contained no allegations indicating any acceptable reason for the delay in seeking redress, nor any probability that Morgan was innocent of the federal crime. The majority, however, held that the district court had jurisdiction to issue the writ and should have granted a hearing to give Morgan "an opportunity to attempt to show that this conviction was invalid." 346 U.S. at page 513, 74 S.Ct. at page 253. Invalidity apparently would be established in Morgan's case by a showing that he did not have counsel and had not competently and intelligently waived his right thereto, in which event, as had been held in Johnson v. Zerbst, supra, the conviction was not merely invalid but void and, therefore, subject to collateral attack.[3]

The Second Circuit even more clearly repudiated the Moore doctrine in its second decision of the Morgan case after remand by the Supreme Court. United States v. Morgan, 2 Cir., 222 F.2d 673. The court held that the only consideration in deciding whether relief should be granted was whether the defendant intelligently waived his right to counsel, that if a person is deprived of this constitutional right "his release does not depend on his establishing his innocence," and that "passage of many years does not cure a void conviction." 222 F.2d at page 675.

We think this position of the Second Circuit is more consonant with the reasoning of the Supreme Court in Morgan than is the Moore rule.[4] We are

---

3. In the Morgan decision the Court at one point might seem to be sanctioning laches as a ground for denying relief when it states: "Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of *coram nobis* must be heard by the federal trial court." 346 U.S. at page 512, 74 S.Ct. at page 253. However, we think that the interpretation given above comports more with the general reasoning of the opinion. This same view of Morgan is expressed in Haywood v. United States, D.C.S.D.N.Y., 127 F.Supp. 485. And in Gordon v. United States, 216 F.2d 495, 498 at note 6, there is a suggestion that the Fifth Circuit also agrees, although Judge Rives adopted a contrary position in a separate concurring opinion. Id. at pages 498-499. In any event, as we indicate later, laches would not apply in this case.

4. The Moore line of cases has been heavily criticized. In addition to the Second Circuit's Morgan decision, see especially Haywood v. United States, supra note 3; United States v. Di Martini, D.C.S.D.N.Y., 118 F.Supp. 601; Note, "Post-Release Attacks on Invalid Federal Convictions: Obstacles to Redress by Coram Nobis," 63 Yale L.J. 115. See, also, Note, "The Need For Coram Nobis in the Federal Courts," 59 Yale L.J. 786, 792.

therefore unable in view of Morgan to apply now the reasons assigned in our earlier Farnsworth decision for denial of the relief sought. The test should be whether appellant's constitutional right to the assistance of counsel has been abridged. If it has, an "essential prerequisite" to the conviction is lacking under Johnson v. Zerbst, supra, and it should be set aside.[5] If a defendant without good reason waits a long time before asserting his claimed right, with the consequence that many witnesses are dead, he might have difficulty maintaining his burden of proof, or a heavier burden of proof might be imposed upon him. See United States v. Morgan, 222 F.2d at page 675. But where the fundamental constitutional right has been denied, an accused should not be precluded from relief because he cannot satisfy a court that he had good cause for any delay in seeking it. "To permit a defense of laches to the writ would, in effect, denude it of one of its essential characteristics—

the power to hurdle a time factor." Haywood v. United States, D.C.S.D.N.Y., 127 F.Supp. 485, 488. Moreover, in this case appellant's delay was excusable in the circumstances. His sentence under the federal conviction did not extend much beyond the date of the Zerbst decision, which for the first time clearly decided that every defendant in a criminal case in the federal courts could have counsel appointed to represent him.[6] From the time of his release until his conviction in New York in 1946 he had no compelling reason to seek to have his federal conviction vacated. Finally, until the Supreme Court decision in Morgan in 1954 there was uncertainty over whether the writ of *coram nobis* would even be available to defendant in the federal courts.[7] Appellant's first petition culminated in July of 1952 with our earlier Farnsworth decision.

The Government also argues that relief should be denied because the Zerbst doctrine should not be applied

5. In Com. of Pa. ex rel. Herman v. Claudy, 76 S.Ct. 223, 227, the Supreme Court again reaffirmed the principle that "men incarcerated in flagrant violation of their constitutional rights have a remedy." The Court ordered a habeas corpus hearing to be given by the state court to a petitioner who alleged that his guilty plea in 1945 was the result of coercion, and that he had never been advised of his right to or given the benefit of counsel. Although the instant case does not involve habeas corpus, the reasoning of the Morgan decision seems to impart to *coram nobis* many of the characteristics of habeas corpus to the end that vindication of fundamental constitutional rights may be had when habeas corpus is unavailable.

6. "It is probably safe to say that from its adoption in 1791 until 1938, the right conferred on the accused by the Sixth Amendment 'to have the assistance of counsel for his defense' was generally understood as meaning that in the Federal courts the defendant in a criminal case was entitled to be represented by counsel retained by him. It was not assumed that this constitutional privilege counsel assigned to him by the court if,

comprised the right of a prisoner to have for financial or other reasons, he was unable to retain counsel. The Sixth Amendment was not regarded as imposing on the trial judge in a Federal court the duty to appoint counsel for an indigent defendant." Holtzoff, "The Right of Counsel Under the Sixth Amendment," 20 N.Y.U.L.Q.Rev. 1, 7–8. See, also, United States v. McKinney, D.C.D.C., 122 F.Supp. 500, 501; Bute v. Illinois, 333 U.S. 640, 661, 68 S.Ct. 763, 92 L. Ed. 986; 3 A.L.R.2d 1003, 1009.

7. " * * * For here, until February 1953, when we decided United States v. Morgan, 2 Cir., 202 F.2d 67, few lawyers— and surely no laymen like defendant— thought such relief available; and, as late as January 4, 1954, four Justices of the Supreme Court believed it was not; see United States v. Morgan, 346 U.S. 502, 513, 74 S.Ct. 247, 98 L.Ed. 248." *United States v. Morgan*, 222 F. 2d at page 675. The Supreme Court granted certiorari in Morgan because of a conflict between the Second Circuit's first decision in that case, 202 F.2d 67, and United States v. Kerschman, 7 Cir., 201 F.2d 682. See 346 U.S. at page 505, 74 S.Ct. at page 249.

retroactively,[8] citing our decision in Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, where the principle of non-retroactivity was recognized. However, we explicitly stated in Durham that the rule there adopted was not to be effective retroactively. 94 U.S.App.D.C. at page 240, 214 F.2d at page 874. In Zerbst, on the other hand, the Supreme Court did no such thing. Rather its language indicates that it was simply enforcing a constitutional right which courts always should have recognized. This view is confirmed by the fact that the Supreme Court itself applied the Zerbst rule retroactively in Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. And this court seems committed to such an interpretation of Zerbst. In McKinney v. United States, 93 U.S.App.D.C. 222, 208 F.2d 844, we applied the Zerbst principle to an alleged violation of the Sixth Amendment during proceedings which occurred several months before the Supreme Court decision. See, also, United States v. Di Martini, D.C.S.D.N.Y., 118 F.Supp. 601.

█ The final question is whether in any event the finding of the District Court that appellant had competently and intelligently waived his right to counsel should be disturbed by us. The Supreme Court in Zerbst pointed out that defendant carries the burden of establishing that he did not competently and intelligently waive his right, for "When collaterally attacked, the judgment of a court carries with it a presumption of regularity." 304 U.S. at page 468, 58 S.Ct. at page 1025. "It is presumed the proceedings were correct and the burden rests on the accused to show otherwise." United States v. Morgan, 346 U.S. at page 512, 74 S.Ct. at page 253. But in Zerbst the Court also said that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights". 304 U.S. at page 464, 58 S.Ct. at page 1023. While, therefore,

the burden is upon appellant to establish he did not waive the right, his burden is lightened by the indulgence of every reasonable presumption against waiver. See Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633; McKinney v. United States, supra.

At the hearing in the District Court on his present petition appellant testified that he did not know at the time of his pleas of guilty in 1935 he had a right to be represented by counsel and he did not advise the court he did not wish to have counsel. The District Court was not required to accept appellant as a credible witness; but the fact is he did not have counsel in the 1935 proceedings, and nothing indicates that he was advised of his right in that regard or knew that it existed. While he had had some previous experience in the courts this was before it was generally recognized that a defendant in a criminal case in a federal court has a constitutional right to the assistance of counsel. See note 6 supra. Furthermore, a gentleman who in 1935 was an Assistant United States Attorney testified as to what occurred on arraignment days in 1935 in the courts which included the court presided over by the judge who accepted appellant's pleas and sentenced him. He said that before the judges would accept pleas of guilty they satisfied themselves that the defendant understood the charge against him. This is quite different from advising him of his right to counsel. He also testified that in case an accused pleaded not guilty and said he did not have the means to obtain an attorney he would always get a lawyer if he asked for one, presumably on appointment by the court, but that he had no recollection of anybody pleading guilty and asking for a lawyer. The reasonable inference from this testimony is that in the situation of appellant in 1935 the only inquiry the judge made was as to the defendant's understanding of the nature of the charges;—he was

---

8. It appears from the opinion in United States v. McKinney, D.C.D.C., 122 F. Supp. 500, 502, that there the United States Attorney "formally conceded that retroactive effect should be given to the ruling in Johnson v. Zerbst."

not advised of his right to have counsel appointed.

■ Considering all the evidence, and giving appellant the benefit of the presumption above referred to, Johnson v. Zerbst, supra 304 U.S. at page 464, 58 S.Ct. 1019, we think he met the burden of showing that he had not intelligently and competently waived his right to the assistance of counsel in the proceedings which eventuated in the judgment of May 3, 1935. We are constrained, therefore, to disagree with the contrary finding of the learned District Judge. Convinced as we are, United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746, we must reverse the order on appeal and remand the case with directions to set aside the judgment of May 3, 1935.

It is so ordered.

WILBUR K. MILLER, Circuit Judge (dissenting).

The judgment of conviction entered by the District Court here in 1935 on Farnsworth's plea of guilty to charges of housebreaking and larceny is presumed to be valid. To overcome the presumption that the judgment is correct, Farnsworth had the burden of proving at the *coram nobis* hearing [1] that he had not competently and intelligently waived his right to the assistance of counsel. Johnson v. Zerbst, 1938, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461; Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268; United States v. Morgan, 1954, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248. In Adams v. McCann, 317 U.S. at page 281, 63 S.Ct. at page 242, the Supreme Court said:

" * * * The Patton decision [Patton v. United States, 1930, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854] left no room for doubt that a determination of guilt by a court after waiver of jury trial could not be set

aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made. If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. * * *"

That the record does not affirmatively show Farnsworth's waiver of his right to counsel when he pleaded guilty does not destroy the presumption. The Supreme Court said in United States v. Morgan, 346 U.S. at page 512, 74 S.Ct. at page 253:

" * * * Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise. * * *"

District Judge McGuire heard the evidence and made findings of fact as follows:

"1. That no statements or admission of guilt were extorted or coerced from James Bufford Farnsworth.

"2. That James Bufford Farnsworth was fully apprised of the nature of the charges against him.

"3. That James Bufford Farnsworth competently and intelligently waived the assistance of counsel at the time of his arraignment, his plea of guilty and at the time he was sentenced."

The question before us on this appeal is whether the trial judge's finding that Farnsworth competently and intelligently waived the assistance of counsel should be set aside. My view is that the find-

---

1. Which was afforded him in 1955 pursuant to United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, although he had long since served the sentence imposed pursuant to his plea of guilty.

ing should not be disturbed on appeal unless it is clearly erroneous. I do not think it is.

Farnsworth testified that he did not waive the assistance of counsel. He said that, when he pleaded guilty, he was not asked whether he desired to have or desired to waive the aid of counsel, and did not know the court would assign counsel on his request. It is apparent that Judge McGuire did not believe Farnsworth's testimony, which my brothers of the majority seem to accept at face value. He was in a much better position than we are to pass on his credibility, as he heard him testify and observed his demeanor.

Moreover, Farnsworth's testimony was in many respects inherently improbable. When he entered the plea of guilty in 1935 he was about 28 years old and was already an experienced criminal who had appeared in other courts. He was fairly well educated, having practically finished high school. I find it difficult to believe, in view of his education and his criminal court experience, that he did not know counsel would be assigned if he desired to have one. Even in cold print, his testimony does not impress the reader as being truthful. Added to that is the fact that, when he testified, he was a confirmed criminal who had spent more than half of his adult life in various prisons for various crimes which run the gamut from uttering worthless checks to deserting from the United States Army. This fact weighed heavily against his credibility.

Aside from Farnsworth's testimony there was no evidence as to waiver except that one Beach, who was an Assistant United States Attorney in 1935, testified it was not then the custom in the District Court here to ask on a guilty plea whether the defendant wished to have or to waive the aid of counsel. Beach's testimony was, of course, wholly inadequate to prove that Farnsworth did not waive the assistance of counsel. So, if Farnsworth's testimony was unworthy of credence, he failed to carry the burden of proving that he did not competently and intelligently make such waiver. My reading of the record convinces me that Judge McGuire was right in rejecting Farnsworth's story as unbelievable, and in concluding that the presumption of validity which attaches to the judgment had not been overturned. Consequently I would affirm his decision and must therefore dissent from the majority opinion.